IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TOMA J. SWINEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 05-0759 |
| v. | ) | Judge Terrence F. McVerry |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| JO ANNE B. BARNHART, Commissioner of | ) | |
| Social Security, | ) | Re: Doc. ## 8, 12 |
| | ) | |
| Defendant. | ) | |

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.      RECOMMENDATION

It is recommended that the Motion for Summary Judgment filed by Plaintiff at Docket No. 8 be denied.  It is further recommended that the Motion for Summary Judgment filed by Defendant at Docket No. 12 be granted and that the decision of the Commissioner of Social Security (Commissioner) to deny Plaintiff Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) be affirmed.

II.     REPORT

This is an action timely filed under the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security finding that although Plaintiff's impairments are "severe" (Tr. 20, Finding No. 3), his "impairment does not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4."  (Tr. 20, Finding No. 3.) Furthermore, Plaintiff "has the residual functional capacity to perform the exertional demands of sedentary work, or work which is generally performed while sitting and never requires lifting in

excess of 10 pounds." (Tr. 20, Finding No. 5 (citation omitted).) The Plaintiff's medically determinable impairment prohibits him from performing his past relevant work, but Plaintiff's medical condition will allow him to make an adjustment to work which exists in significant numbers in the national economy. (Tr. 21, Finding Nos. 6, 11.) Plaintiff has not engaged in substantial gainful activity since alleging disability on December 31, 2000. (Tr. 15, 20, Finding No. 1.)

Plaintiff seeks DIB pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-33 and SSI benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83. To obtain DIB, Plaintiff must show that he became disabled on or before his date last insured.[1] To obtain SSI benefits, he must show that he became disabled prior to the final decision of the Commissioner. Both parties have filed motions for summary judgment. The issue presented by this appeal is whether there is substantial evidence in the record to support the Commissioner's findings. 42 U.S.C. § 405(g).

A.    **Statement of Facts**

On June 13, 1998, Plaintiff was involved in a motorcycle accident, and suffered a displaced fracture of the right tibia and fibula. (Tr. 146, 156.) On June 14, 1998, Plaintiff was admitted to University of Pennsylvania Medical Center Horizon Hospital (UPMC Horizon) for emergency surgery to repair the fractures. (Tr. 147.) Plaintiff was treated by Dr. Jurenovich and underwent an "open reduction and internal fixation" for fracture of the right tibia and fibula. (Tr. 144.) On June 16, 1998, Plaintiff was discharged from UPMC Horizon. (Tr. 145.) On October 7, 1998, Dr. Jurenovich saw Plaintiff again, and indicated that he was doing fairly well following the surgery, and

---

1. For purposes of eligibility for DIB, Plaintiff was insured through the date of the ALJ's decision, October 19, 2004.

was only using a cane for occasional ambulation assistance.  (Tr. 183.)  On November 18, 1998, Plaintiff reported that he had returned to work.  (Tr. 181.)  In February 1999, Plaintiff was prescribed an electro-stimulation device to aid his recovery.  (Tr. 178.)  Plaintiff stopped using the electro-stimulation pack in June of 1999.  (Tr. 176.)

Plaintiff testified that on December 31, 2000, he left his job due to his medical condition. (Tr. 259.)  Plaintiff did not seek medical attention for his right leg, however, until October 1, 2001, when he went to Mercer Family Medicine Center with complaints of lower right leg pain from the previous week.  (Tr. 93.)  Plaintiff was referred for a venous Doppler ultrasound to rule out deep vein thrombosis.  (Tr. 92.)  On October 3, 2001, the venous Doppler ultrasound showed no sonographic evidence of lower right extremity deep venous thrombosis.  (Tr. 84.)

On February 6, 2002, Plaintiff returned to Mercer Family Medicine Center with complaints of pain in his left foot.  (Tr. 82.)  Plaintiff did not report any pain in his back or right leg.  In January of 2003, Plaintiff saw Dr. Jurenovich for the first time since June of 1999.  (Tr. 173.)  Plaintiff complained of pain in the leg, but x-rays showed a healing fracture of the tibia and fibula.  (Tr. 173.) In February of 2003 Plaintiff received a tomogram.  (Tr. 168.)  The tomography report, however, indicated a complete bony union of the tibia and fibular fractions.  (Tr. 98.)  The tomography report also identified a suspected fatigue fracture of the distal tibial screw.  (Tr. 98.)  On March 4, 2003, Plaintiff, still complaining of ongoing pain in his right leg, elected to proceed with removal of the intramedullary rod from his right leg.  (Tr. 165.)  On September 16, 2003, Plaintiff saw Dr. Jurenovich again, but was unable to have the rod removed due to insurance problems.  (Tr. 212.) Plaintiff complained of "some irritation" of his leg at this time.  (Tr. 212.)  In March 2004, Plaintiff was again unable to have his rod removed due to insurance problems.  (Tr. 210.)  Plaintiff still

complained of pain in his leg at this time.  (Tr. 210.)  On May 28, 2004, Dr. Jurenovich saw Plaintiff

for outpatient surgery to remove the  intramedullary rod from his right leg.  (Tr. 205.)  The rod and

two proximal interlocking screws were successfully removed.  (Tr. 205.)  Dr. Jurenovich, however,

was unable to remove the fractured tip of the medial screw.  (Tr. 205.)  Overall, the surgery was a

success, and the fractures to Plaintiff's right tibia were completely healed.  (Tr. 206.)  By June 15,

2004, Plaintiff stopped using his crutches, and was released from Dr. Jurenovich's care.  (Tr. 202.)

Dr. Jurenovich advised Plaintiff to limit activities involving Plaintiff's right leg for another three to

four weeks.  (Tr. 202.)  On July 13, 2004, Plaintiff saw Dr. Jurenovich again, complaining of limited

motion in his leg, and that his right knee was "giving out."  (Tr. 199.)  An x-ray was taken of

Plaintiff's right knee, the results of which were "essentially negative, except for the remnants of the

removal of the intramedullary rod."  (Tr. 199.)  Finally, on August 11, 2004, less than one month

after Plaintiff stopped using crutches, Dr. Jurenovich wrote, on prescription paper, that Plaintiff was

"totally disabled and unable to do less than sedentary work."  (Tr. 218.)

Plaintiff initially filed for DIB and SSI on July 15, 1998.  (Tr. 15.)  Plaintiff's application was

denied and not appealed.  (Tr. 14.)  On January 15, 2003, Plaintiff filed applications for DIB, a

Period of Disability, and SSI, alleging inability to work beginning December 31, 2000, due to a leg

injury.  (Tr. 15.)  On May 29, 2003, Dr. Frank Bryan completed a "Residual Functional Capacity

Assessment" based on his review of the record.  (Tr. 189.)  In Dr. Bryan's review of Plaintiff's

record, he questioned the credibility of Plaintiff.  (Tr. 190.)  Dr. Bryan found no indication that

Plaintiff had been wearing a brace for some time, yet Plaintiff said he wears a brace, implying that

he wore it often.  (Tr. 190.)  Additionally, Dr. Bryan noted the following with regard to Plaintiff's

responses to his activities of daily living:

> The claimant's responses to his activities of daily living strongly suggest symptom magnification to the extent the claimant alleges being totally precluded from work related activities [sic] [T]he claimant's subjective complaints regarding the severity of limitations caused by his impairment are not fully credible. The claimant's statement that he has some discomfort in his right tibia is felt to be credible. His allegations that this precludes most activities of daily living or all work related activities is felt not to be credible.

(Tr. 190.)

On August 30, 2004, a hearing was held before James J. Pileggi, an Administrative Law Judge (ALJ). (Tr. 11.) Plaintiff testified that since he quit his welding job on December 31, 2000, he has held down several part time jobs. (Tr. 259, 260.) Plaintiff also indicated that his mobility was severely limited, and that if he did not spend all day on his back, he was in constant pain. (Tr. 263.) On October 19, 2004, the ALJ notified Plaintiff that he had reached an unfavorable decision in Plaintiff's applications. (Tr. 11.)

The ALJ found that Plaintiff had met the disability insured status requirements of the Social Security Act, but determined that Plaintiff had not been under a disability, as defined by the Social Security Act, at any time through the date of the ALJ's decision. (Tr. 21.) The ALJ found that Plaintiff has an impairment which is severe but which does not meet or equal the criteria of any of the impairments listed in Appendix 1 to Subpart P, 20 C.F.R. Part 404. (Tr. 20.) Additionally, the ALJ found that although Plaintiff is unable to perform his past relevant work, Plaintiff is capable of making an adjustment to work which exists in significant numbers in the national economy. (Tr. 21.) The ALJ ultimately determined that Plaintiff was not entitled to a Period of Disability or to Disability Insurance benefits under Sections 216(I) and 223, respectively, of the Social Security Act, and that Plaintiff was also not eligible for Supplemental Security Income under Sections 1602 and

1614(a)(3)(A) of the Social Security Act.  (Tr. 21.)

### B.      Standard of Review

The standard of judicial review is whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401; *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552 (1988)); *Smith*, 637 F.2d at 970; *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). "Substantial evidence" is more than a "scintilla." *Jesurum v. Secretary of United States Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995); *Stunkard v. Secretary of Health and Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Smith*, 637 F.2d at 970.  If supported by substantial evidence, the Commissioner's decision must be affirmed.

The Supreme Court has described a five-part test established by the Commissioner to determine whether a person is disabled:

> The first two steps involve threshold determinations that the claimant is not presently working and has an impairment which is of the required duration and which significantly limits his ability to work. *See* 20 C.F.R. §§ 416.920(a) through (c) (1989).  In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work.  *See* 20 C.F.R. pt. 404, subpt. P, App. 1 (pt. A) (1989).  If the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. § 416.920(d).  If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps.  At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience.  If the claimant cannot do his past work or other work, he qualifies for benefits.  §§ 416.920(e) and (f).

6

*Sullivan v. Zebley*, 493 U.S. 521, 525-26 (1990). *Accord Barnhart v. Thomas*, 540 U.S. 20, 23-25

(2003). The initial burden rests with Plaintiff to demonstrate that he is unable to engage in his past

work. *Stunkard*, 841 F.2d at 59; *Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981); *Dobrowolsky*, 606

F.2d at 406; *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979). The burden then shifts to the

Commissioner to show that other work exists in the national economy that he could perform. *Green*

*v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984). The fifth step is divided into two parts:

> First, the [Commissioner] must assess each claimant's present job
> qualifications. The regulations direct the [Commissioner] to consider
> the factors Congress has identified as relevant: physical ability, age,
> education, and work experience. See 42 U.S.C. § 423(d)(2)(A); 20
> C.F.R. § 404.1520(f) (1982). Second, [he] must consider whether
> jobs exist in the national economy that a person having the claimant's
> qualifications could perform. 20 C.F.R. §§ 404.1520(f), 404.1566-
> 404.1569 (1982).

*Heckler v. Campbell*, 461 U.S. 458, 460-61 (1983) (footnotes omitted).


C.    **Analysis**

Plaintiff complains on appeal that the ALJ's decision is not supported by substantial evidence

and challenges it on the grounds that the ALJ: (1) failed to consider or properly analyze medical

evidence of record; (2) did not adequately explain why Plaintiff's testimony was found to be less

than fully credible. The Defendant, however, argues that the ALJ properly considered all relevant

evidence, and that the ALJ adequately explained why Plaintiff's testimony was found to be less than

fully credible.

1.      **Medical Evidence**

Plaintiff claims that the ALJ failed to consider or properly analyze medical evidence of record. (Plaintiff's Brief in Support of Motion for Summary Judgment at 4-7.)  Specifically, Plaintiff argues that the ALJ failed to consider the fractured lower distal interlocking screw which still remains in his leg, and that the ALJ set forth inadequate reasons for rejecting the August 11, 2004 opinion of Dr. Jurenovich.  (Plaintiff's Brief in Support of Motion for Summary Judgment at 4.)

a.      The fractured lower distal interlocking screw

Plaintiff claims that the ALJ failed to consider the fractured lower distal interlocking screw which remains in Plaintiff's leg.  (Plaintiff's Brief in Support of Motion for Summary Judgment at 5.)  Plaintiff argues that the broken portion of the screw which is still in his leg is the "most significant evidence" of why he is experiencing the pain, swelling, discomfort, and dysfunction of which he testified at the hearing.  (Plaintiff's Brief in Support of Motion for Summary Judgment at 5.)

The record indicates that on May 28, 2004, Plaintiff had an operation to remove the intramedullary rod in his right leg. (Tr. 205.)  During that operation, Dr. Jurenovich was unable to remove the distal tip of the interlocking screw just above the medial malleolus area. (Tr. 205.)  The record indicates that Plaintiff recovered well from the surgery, and was able to stop using crutches by June 15, 2004.  (Tr. 202.)  An x-ray taken on July 13, 2004, came back "essentially negative, except for the remnants of the removal of the intramedullary rod." (Tr. 199.)  The medical record contains no complaints of pain by Plaintiff following the surgery, nor does the medical record indicate that the remnant of the interlocking screw could cause Plaintiff any pain or discomfort. Therefore, this Court's review of the objective medical record does not support Plaintiff's contention

that the fractured lower distal interlocking screw is the "most significant evidence of why Plaintiff is experiencing the degree of pain, swelling, discomfort, and dysfunction he testified to at the hearing." (Plaintiff's Brief in Support of Motion for Summary Judgment at 5.)

   b. Rejection of Dr. Jurenovich's opinion of August 11, 2004

  Plaintiff next argues that the ALJ set forth inadequate reasons for rejecting the opinion of Dr. Jurenovich, given on August 11, 2004, that Plaintiff is totally disabled and unable to do less than sedentary work. (Plaintiff's Brief in Support of Motion for Summary Judgment at 5.)

  Social Security Regulations clearly state that issues, such as "disability" and "unable to work" are outside the scope and expertise of a medical source and are reserved for the Commissioner. *See* SSR 96-5P.

  The ALJ stated that he gave no special significance to Dr. Jurenovich's statement from August 11, 2004, because such statements are not medical opinions, but an administrative finding "dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein." (Tr. 18.)

  Although Dr. Jurenovich's statement was given no special significance, it was treated as the opinion of Plaintiff's treating doctor. Dr. Jurenovich's opinion, however, was not given controlling weight because it was contradicted by his own treatment records.[2] (Tr. 18.)

---

2. Although the treating physician doctrine provides that the ALJ accord treating physicians reports great weight, exceptions to this doctrine will apply as follows:

  A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." . . . The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. In choosing to reject the treating physician's assessment,

Moreover, controlling weight may not be given to a treating physician's medical opinion *unless the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques.* SSR 96-2p (emphasis added).

Here, the record reflects that Plaintiff underwent an "open reduction and internal fixation for fracture of the right tibia and fibula" on June 14, 1998, but had recovered enough so that by October 7, 1998, Plaintiff was "occasionally using a cane" to walk. (Tr. 144, 147.) Plaintiff returned to work by Novemberr 18, 1998, and did not complain of pain to his right leg until October 1, 2001. (Tr. 93.) Tests of Plaintiff's leg showed no evidence of any problems with his leg. (Tr. 84.) In January 2003, Plaintiff saw Dr. Jurenovich (the first time since June 1999) with complaints of pain in his right leg. (Tr. 173.) Tests of the Plaintiff's leg indicated a complete union of the tibia and fibular fractions. (Tr. 98, 168.) These tests, however, identified a suspected fatigue fracture of the distal tibial screw. (Tr. 98.) On March 4, 2003, Plaintiff elected to have the intramedullary rod removed from his right leg, but, due to insurance problems, Plaintiff was unable to have the rod removed until May 28, 2004. (Tr. 162, 205, 212.) Although Dr. Jurenovich was unable to remove the distal tip of the interlocking screw from Plaintiff's leg, Dr. Jurenovich's notes indicate that the surgery was an

---

an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her credibility judgments, speculation or lay opinion.

*Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)) (additional internal citations omitted). *See also, Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) ("Under applicable regulations and the law of this Court, opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight.") "The ALJ must review all the medical findings and other evidence presented in support of the attending physician's opinion of total disability." *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (citing *Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir. 1990)).

10

overall success.  (Tr. 205, 206.)  By June 15, 2004, Plaintiff stopped using his crutches, and was released from Dr. Jurenovich's care.[3]  (Tr. 202.)  On July 13, 2004, Plaintiff saw Dr. Jurenovich complaining of "very limited" motion in the leg, and his right knee giving out, but an x-ray of Plaintiff's leg came back "essentially negative," except for the remnant of the screw in Plaintiff's leg.  (Tr. 199.)

As the ALJ indicated in his decision, Dr. Jurenovich's opinion that Plaintiff is "totally disabled and unable to do less than sedentary work" is not supported by medically acceptable clinical and laboratory diagnostic techniques.  (Tr. 18.)  The medical record indicates that Plaintiff was steadily improving.  (Tr. 199, 202.)  There is nothing in the record which suggests that Plaintiff is completely disabled and unable to do less than sedentary work, and in fact, the R.F.C.A. prepared by Dr. Bryan noted that Plaintiff's responses to his activities of daily living "strongly suggest symptom magnification . . ."

Because Dr. Jurenovich's opinion was not supported by the medical record, the ALJ was not required to give it controlling weight.  *See* SSR 96-2p.

## 2.      Credibility of Plaintiff's Testimony

Next, Plaintiff argues that the ALJ improperly evaluated the credibility of Plaintiff's testimony at the hearing.

The ALJ is required to make findings on the credibility of a Plaintiff's testimony.  *Kephart v. Richardson*, 505 F.2d 1085, 1089 (3d Cir. 1974).  Ordinarily, the ALJ's credibility determination is entitled to deference because he "has the opportunity at a hearing to assess a witness's demeanor."

---

3.  Dr. Jurenovich advised Plaintiff to limit activities involving Plaintiff's right leg for another three to four weeks.  (Tr. 202.)

*Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (*dicta*) (citing *Atlantic Limo., Inc. v. NLRB*,

243 F.3d 711, 718 (3d Cir. 2001)).  The United States Court of Appeals for the Third Circuit has

found an ALJ's credibility determination to be supported by substantial evidence where the ALJ

cited specific instances in the record where Plaintiff's complaints of pain or other subjective

symptoms were inconsistent with (1) the objective medical evidence of record; (2) other testimony

by Plaintiff; and (3) Plaintiff's own description of his daily activities.  *Hartranft v. Apfel*, 181 F.3d

358, 362 (3d Cir. 1999).  Additionally, SSR 96-7p requires an ALJ to articulate the reasons for his

credibility findings as follows:

> [I]t is not sufficient to make a conclusionary statement that "the
> individual's allegations have been considered" or that "the allegations
> are (or are not) credible."  It is also not enough for the adjudicator
> simply to recite the factors that are described in the regulations for
> evaluating symptoms.  The determination or decision must contain
> specific reasons for the finding on credibility, supported by the
> evidence in the case record, and must be sufficiently specific to make
> clear to the individual and to any subsequent reviewers the weight the
> adjudicator gave to the individual's statements and the reasons for
> that weight.  This documentation is necessary in order to give the
> individual a full and fair review of his or her claim, and in order to
> ensure a well-reasoned determination or decision.

SSR 97-7p.

The factors for evaluating symptoms referred to in the ruling include Plaintiff's daily

activities; the location, duration, frequency, and intensity of his pain or other symptoms; factors that

precipitate and aggravate his symptoms; the type, dosage, effectiveness, and side effects of any

medication he takes to alleviate his pain or other symptoms; treatment, other than medication, he has

received to relieve his pain or other symptoms; any measures he used to relieve his pain or other

symptoms (e.g., lying flat on his back, standing for 15 to 20 minutes every hour, sleeping on a board,

etc.); and, other factors concerning his functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529 (c)(3) and 416.929(c)(3)(2003).

When considering Plaintiff's testimony, the ALJ indicated as follows:

> While the claimant alleges that he experiences constant pain and swelling in his right leg, he has reported that he is able to remain sitted [sic] all day. He spends his time watching movies and being with his family. The claimant has stated that he is able to care for his personal needs, and that his medications helped to relieve his pain (Testimony and Exhibit 5E). The claimant also testified that he worked at numerous short-term jobs after his alleged onset date. Although this work is not considered to be substantial gainful activity, this work indicates a capacity for some work activity. In addition, the undersigned notes that the claimant had a poor work history prior to his injury, which raises a question as to whether the claimant's continuing unemployment is actually due to his medical impairment.

(Tr. 18.) In his brief, Plaintiff claims that "the ALJ failed to analyze critical portions of the medical evidence, which establishes a more than adequate foundation for the claimant's testimony." (Plaintiff's Brief in Support of Motion for Summary Judgment at 7.) Specifically, Plaintiff claims that the ALJ mischaracterized the extent of Plaintiff's ability to participate in activities of daily living. (Plaintiff's Brief in Support of Motion for Summary Judgment at 7.) To support these allegations, Plaintiff points to his testimony that he "is limited to 10 minutes of sitting, 20 minutes of standing, 100 yards of walking, and that he must lie down and elevate his leg most of the day to relieve pain in his leg." (Tr. 263-266, 268-269.) Plaintiff, however, does not point to any portion of the medical record which the ALJ failed to analyze, nor is Plaintiff able to point to any portion of the record which supports his testimony.[4]

---

4. Plaintiff, in his reply brief, asserts that the broken portion of the distal interlocking screw which was left in his leg is "the most significant evidence of why the claimant was experiencing the degree of pain, swelling, discomfort and dysfunction [which] he testified at the hearing."

In reviewing the administrative determination of the Commissioner, the question before the Court is whether there is substantial evidence in the agency record to support the findings of the Commissioner. 42 U.S.C. § 405(g).  *See also Richardson*, 402 U.S. at 389;  *Adorno*, 40 F.3d at 43. This Court's review of the record indicates that the ALJ's decision is supported by substantial evidence.

III.   <u>CONCLUSION</u>

For the reasons set forth above, it is respectfully recommended that Plaintiff's Motion for Summary Judgment be denied.  It is further recommended that Defendant's Motion for Summary Judgment be granted, and that the decision of the Commissioner of Social Security denying Plaintiff's request for an award of disability insurance benefits and supplement security income be affirmed.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, within ten (10) days after being served with a copy, any

---

(Plaintiff's Reply Brief at 1.)  The medical record, however, does not support this claim.  As discussed above, the medical record indicates that before the procedure Plaintiff complained of "some irritation" of his leg at this time.  (Tr. 212.)  Following the operation, the medical record contains no complaints of pain or other evidence which would support Plaintiff's opinion that the broken portion of the screw could cause the pain of which he testified.   (Tr. 199, 202, 206.)

party may serve and file written objections to this Report and Recommendation.  Any party opposing

the objections shall have seven (7) days from the date of service of objections to respond thereto.

Failure to file timely objections may constitute a waiver of any appellate rights.


/s/Lisa Pupo Lenihan
LISA PUPO LENIHAN
United States Magistrate Judge

Dated: August 30, 2006

cc:      Honorable Terrence F. McVerry
         United States District Judge

         Terry K. Wheeler
         56 Clinton Street
         Greenville, PA 16125

         Jessica Smolar
         United States Attorney's Office
         700 Grant Street
         Suite 400
         Pittsburgh, PA 15219